UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| GOLF CART SERVICES, INC. | : | CIVIL NO: 1:12-CV-02316 |
|---|---|---|
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| KABRO ASSOCIATIES, LLC, | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

**I. Introduction.**

In this case, the plaintiff, Golf Cart Services, Inc. (GCS) claims that the defendant, Kabro Associates, LLC (Kabro Associates), entered into a mortgage with a party who owed GCS money, and that the mortgage was entered into with the intent of hindering, delaying, or defrauding GCS or that that was the effect of the mortgage. GCS brings claims under Pennsylvania's Uniform Fraudulent Transfer Act, and Kabro Associates has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Kabro Associates has also moved to strike a supplemental response and a supplemental brief filed by GCS in opposition to the motion to dismiss. Because GCS has been granted leave to file its supplemental response and supplemental brief in opposition, we recommend

that the motion to strike be denied. Because the complaint states claims upon which relief can be granted, we recommend that the motion to dismiss be denied.

**II. Background and Procedural History.**

GCS, a Pennsylvania corporation that sells and leases golf carts and that provides maintenance, parts, and accessories for golf carts, began this action in the Court of Common Pleas of Adams County, Pennsylvania. Kabro Associates, a commercial real estate developer and a limited liability company with an office and place of business in New York, removed the case to this court pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis that this court has diversity jurisdiction under 28 U.S.C. § 1332.

GCS alleges the following facts in the complaint. GCS leased a fleet of golf carts to "Kabro of Majestic Ridge, LLC" d/b/a Majestic Ridge Golf Club (KMR) by lease and service agreements dated March 23, 2007, March 11, 2009, and June 21, 2011. Two of the members and owners of KMR are Lee Kaplan and Robert Miller, who are also members of Kabro Associates and who are responsible for Kabro Associates' day-to-day operations.

In the fall of 2011, KMR defaulted under the lease and service agreements with GCS, and, on March 20, 2012, GCS filed a civil action against KMR in the

Court of Common Pleas of Adams County, Pennsylvania. In that action, which is still pending in state court, GCS is seeking more than $347,000 in damages for unjust enrichment and breach of contract.

Prior to leasing the golf carts, on January 16, 2007, KMR had purchased the real estate on which the Majestic Ridge Golf Club is located for $2,500,000, and during the time that GCS was a party to the lease and service agreements with KMR, KMR owned that real estate (golf club property). In December of 2011, prior to the time that GCS filed the suit against KMR, but with knowledge of GCS's pending claim, KMR encumbered the golf club property with a mortgage in favor of Kabro Associates in the amount of $3,455,000. That mortgage was satisfied of record on June 4, 2012, and by deeds dated May 30, 2012, and July 31, 2012, KMR transferred the golf club property to a newly formed limited liability company—Majestic Ridge, LLC—for $600,000.

GCS alleges that by encumbering the golf club property with the mortgage to Kabro Associates and conveying the golf club property to Majestic Ridge, LLC, KMR became insolvent and that the mortgage and conveyance were done in order to avoid creditors' claims, specifically GCS's claims. GCS alleges that Kabro Associates cooperated with KMR with the intent to hinder, delay, or defraud creditors of KMR and specifically GCS. According to GCS, the mortgage was fraudulent as evidenced by the following: it was made after GCS had threatened

suit against KMR and it was made with the actual intent to hinder, delay, or defraud GCS; KMR encumbered the golf club property without receiving a reasonably equivalent value in exchange; KMR encumbered the golf club property and its remaining assets were unreasonably small in relation to the mortgage transaction, as evidenced by the sale of the property less than six months later for 17 percent of the face value of the mortgage; KMR incurred debts beyond its ability to pay; KMR became insolvent as a result of the mortgage and conveyance of the golf club property; the mortgage occurred shortly before GCS instituted suit; and the encumbrance of the golf club property was to an insider.

Under Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa.C.S.A. §§ 5101-5110, GCS seeks avoidance of the mortgage and the $600,000 proceeds of the transfer to the extent necessary to satisfy its claims against KMR; attachment or other provisional remedies against the assets of Kabro Associates; an injunction enjoining the transfer of other property of Kabro Associates; the appointment of a receiver to manage other property of Kabro Associates; and "[a]ny other relief the circumstances may require."

On November 27, 2012, Kabro Associates filed a motion to dismiss the complaint, and, on December 3, 2012, Kabro Associates filed a brief in support of that motion. On December 11, 2013, GCS filed a response to and a brief in

opposition to the motion to dismiss. On December 13, 2013, Kabro Associates filed a reply brief in support of its motion to dismiss.

On January 31, 2013, without first seeking leave of court to do so, GCS filed a supplemental response to and a supplemental brief in opposition to the motion to dismiss. In its supplemental response and supplemental brief, GCS deletes certain statements that it had made in its original response and brief in opposition. More specifically, GCS asserts that its "allegation of the sale or transfer of the golf club property to an insider was mistaken." *Doc. 14* at 1. GCS states that, nevertheless, it stands "by the allegation made in its complaint that the encumbrance made by Kabro of Majestic Ridge LLC in favor of Defendant, Kabro Associates, LLC was a fraudulent conveyance under Pennsylvania Law." *Id.* The same day that GCS filed its supplemental response and supplemental brief in opposition, Kabro Associates filed a motion to strike those documents, and on February 6, 2013, Kabro Associates filed a brief in support of its motion to strike. Thereafter, on February 14, 2013, GCS filed a motion for leave of court to file its supplemental response and supplemental brief in opposition to the motion to dismiss, and, on February 19, 2013, Judge Conner granted that motion. On February 20, 2013, GCS filed a response and a brief in opposition to Kabro Associates' motion to strike, and on that same date, Kabro Associates filed a reply brief in support.

Judge Conner has referred the motion to dismiss and the motion to strike to the undersigned. Given that Judge Conner granted GCS's motion for leave to file its supplemental response and supplemental brief in opposition to the motion to dismiss, we recommend that Kabro Associates' motion to strike be denied as moot. Because, as discussed below, the complaint states claims upon which relief can be granted, we recommend that the motion to dismiss be denied.

### III. **Motion to Dismiss and Pleading Standards.**

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). With respect to the

benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler, supra*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir.1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal, supra,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

8

of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal, supra,* 556 U.S. at 675 & 679).

## IV. **Discussion.**

GCS brings claims against Kabro Associates under Pennsylvania's Uniform Fraudulent Transfer Act (PUFTA), 12 Pa.C.S.A. §§ 5101-5110. PUFTA provides for liability under two distinct theories: actual fraud and constructive fraud. *United States v. Green*, 201 F.3d 251, 254 (3d Cir. 2000)(discussing Pennsylvania's Uniform Fraudulent Conveyance Act, the predecessor of PUFTA). "Historically, fraudulent transfer law 'addressed transactions in which the debtor, by engaging in a transaction, had a *specific intent* to prevent or interfere improperly with collection efforts in order to retain some benefit for the debtor.'" *Id.* (quoting Barry L. Zaretsky, *Fraudulent Transfer Law as the Arbiter of Unreasonable Risk*, 46 S.C.L.Rev. 1165, 1165 (1995)). "However, because courts recognized 'the difficulty of proving a transferor's specific intent, [they] developed principles of

*constructive fraud* under which a transaction might be avoidable as fraudulent even in the absence of a showing of *actual* intent to hinder, delay, or defraud.'" *Id.* "Thus, the two bodies of fraudulent transfer law taken together provide that the debtor 'may not dispose of his property with the *intent* (actual fraud) or the *effect* (constructive fraud) of placing it beyond the reach of creditors.'" *Id.* (quoting Countryman, *Cases and Materials on Debtor and Creditor* 127 (2d ed.1971)).

The actual fraud provision of PUFTA provides that a transfer or obligation incurred by a debtor is fraudulent as to present and future creditors "if the debtor made the transfer or incurred the obligation: . . . with actual intent to hinder, delay or defraud any creditor of the debtor." 12 Pa.C.S.A. § 5104(a)(1). "The existence of fraudulent intent may be inferred from all facts and circumstances surrounding the conveyance." *Tiab Commc'ns Corp. v. Keymarket of Nepa, Inc.*, 263 F. Supp. 2d 925, 934 (M.D. Pa. 2003). PUFTA sets forth the following nonexhaustive list of factors, often called "badges of fraud," to consider in determining actual intent:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all of the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;

> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 Pa.C.S.A. § 5104(b); s*ee also* 18A Summ. Pa.Jur.2d Commercial Law § 22:21 (2d ed.).

Additionally, the constructive fraud provisions of PUFTA are found in 12 Pa.C.S.A. § 5104(a)(2) and §5105. Section 5104(a)(2) provides that a transfer or obligation incurred by a debtor is fraudulent as to present and future creditors "if the debtor made the transfer or incurred the obligation:

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Section 5105 provides that a transfer or obligation incurred by a debtor is fraudulent as to present creditors "if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the

11

transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

Kabro Associates contends that the complaint fails to state a claim upon which relief can be granted because the allegations in the complaint are conclusory and not supported by well-pleaded facts. Kabro Associates further contends that the complaint contains the type of bare bones pleading and formulaic recitation of the elements of a cause of action that the Supreme Court rejected in *Iqbal, supra,* 556 U.S. at 679-80 (explaining that a court must disregard allegations that are no more than legal conclusions and that such allegations are not assumed to be true).

Here GCS adequately alleges facts and circumstances from which it can reasonably be inferred that KMR entered into the mortgage with the actual intent to hinder, delay, or defraud one or more of its creditors. *See* 12 Pa.C.S.A. § 5104(a)(1). Although GCS does not allege facts to support each of the "badges of fraud" identified in 12 Pa.C.S.A. § 5104(b), the complaint asserts sufficient facts that bear on the issue of intent to satisfy the pleading requirements of Rule 8(a)(2) and the mandates of *Iqbal* and *Twombly*. First, GCS alleges that the mortgage was entered into after GCS had threatened suit against KMR and that KMR did not receive a reasonably equivalent value in exchange for the mortgage. Further, GCS alleges that KMR incurred debts beyond its ability to pay and that KMR became insolvent as a result of the mortgage and the conveyance of the golf club property.

GCS also alleges that the mortgage was to an insider and that two of the members and owners of KMR are also members of Kabro Associates and are responsible for Kabro Associates' day-to-day operations. GCS has alleged several facts and circumstances, or badges of fraud, that, in combination, support its allegation that KMR entered into the mortgage with the intent to hinder, delay, or defraud its creditors. These allegations provide the defendant with fair notice of GCS's claim and of the grounds upon which it rests, and we conclude that they state a plausible claim. Accordingly, we conclude that the complaint states an actual fraud claim upon which relief can be granted under PUFTA.

To plead a claim upon which relief can be granted under the constructive fraud provisions of PUFTA, GCS must allege facts from which it can reasonably be inferred that KMR did not receive reasonably equivalent value in exchange for the mortgage and that KMR: (1) was insolvent at the time of the mortgage; (2) became insolvent as a result of the mortgage; (3) was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or (4) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. *See* 12 Pa.C.S.A. § 5104(a)(2) and § 5105. GCS alleges that KMR did not receive a reasonably equivalent value in exchange for the mortgage, that

13

KMR became insolvent as a result of the mortgage and conveyance of the golf club property; that KMR's remaining assets were unreasonably small in relation to the mortgage transaction as evidenced by the sale of the property less than six months later for 17 percent of the face value of the mortgage; and that KMR incurred debts beyond its ability to pay. Again, these allegations provide the defendant with fair notice of GCS's claim and of the grounds upon which it rests, and we conclude that they state a plausible claim. Accordingly, we conclude that the complaint states a constructive fraud claim upon which relief can be granted under PUFTA.

## V. Recommendations.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that Kabro Associates' motion (doc. 4) to dismiss the complaint and motion (doc. 16) to strike be denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The

briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 22nd day of May, 2013.

*<u>S/Susan E. Schwab</u>*
Susan E. Schwab
United States Magistrate Judge